[Crim. No. 3530.   First Dist., Div. Two.   Feb. 10, 1959.]

THE PEOPLE, Respondent, v. RICHARD A. CHRISTENBERY, Appellant.

Robert P. Praetzel, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, William O. Weissich, District Attorney (Marin), and Bruce B. Bales, Deputy District Attorney, for Respondent.

DOOLING, J.—Appellant was convicted by the court sitting without a jury of grand theft.

The prosecution's evidence showed that appellant, who was then using the name of Taylor, was in 1957 employed by a San Rafael automobile dealer. The complaining witness, Marianne Muglia, met appellant and told him that she was interested in buying a new car. Appellant represented to her that he would obtain for her a 1957 Rambler sedan in exchange for her 1956 Rambler and $392 in cash. Appellant represented that he was obtaining the new car directly from the Wisconsin factory. On July 22, 1957, Miss Muglia gave appellant her check for $392 which he cashed the same day. Miss Muglia was leaving California for a vacation in New York State on August 4, 1957, and before leaving she inquired of appellant about the new car and appellant told her that it would be delivered to her in New York City on August 6. The car was not delivered in New York City and Miss Muglia went from New York City to Carthage, New York. While in Carthage she received by mail from her roommate in California a power of attorney and bill of sale and the ''pink slip'' of her 1956 Rambler with a letter informing her that the execution of these papers was necessary to enable appellant to transfer her title to her 1956 Rambler in order to complete the deal. The same day that she received these papers appellant telephoned to her from California and told her that he needed these papers immediately. He stated in this conversation that he would have the new car delivered to her at the agency closest to Carthage in about two weeks. He explained his failure to have the 1957 Rambler delivered to her in New York City by saying that he had not finished negotiating the deal because he had not had the proper papers.

Before leaving for New York Miss Muglia had left her 1956 car with her roommate in California with instructions not to deliver it to appellant until she instructed her to do so. Miss Muglia executed the documents sent to her, had them acknowledged by a notary and mailed them to her roommate. Appellant obtained the executed documents and the 1956 Rambler from the roommate. When the roommate told appellant that Miss Muglia had instructed her not to deliver the old car to him until Miss Muglia had told her to do so, appellant told the roommate that he had talked to Miss Muglia and that she understood that he had to have the old car and sell it in order to buy the new one. He further stated to the roommate that he was going to New York City and that he

would get the new car and drive it himself to Carthage and deliver it to Miss Muglia.

Appellant sold the old car for $1,200 to a dealer in San Francisco to whom he represented that he was selling it for his sister-in-law but requested that the check be drawn in his name. Appellant never delivered a new car to Miss Muglia, nor did he ever return to her any of the money that he received as a result of the transaction.

Appellant denied that he had ever promised to secure a 1957 Rambler for Miss Muglia on the terms to which she testified. His testimony was that he had only said that he would try to get her such a car and that it proved impossible to do so. He explained the receipt of the $392 check by testifying that a San Francisco dealer had told him that he probably could get a 1957 Rambler of the type desired by Miss Muglia and that he had gotten $450 from Miss Muglia ($392 by check and $58 in cash) to use as a deposit if the dealer did locate such a car. He further testified that in his telephone conversation with Miss Muglia in Carthage he had told her that he had found it impossible to find a 1957 Rambler of the type which she desired and that she had then authorized him to sell her 1956 Rambler for her. He testified further that he had, after Miss Muglia's return to California, repaid her $1,350 and promised to pay the balance by October 31, 1957. He produced an undated, typewritten receipt signed by Miss Muglia which acknowledged the receipt of $1,350 on account of $1,650, the purchase price of her 1956 Rambler, and recited that the balance was to be paid on October 31, 1957. She admitted her signature on this document but denied that the typewritten receipt was on it when she signed it, denied the receipt of $1,350 or any other sum and denied the other testimony of appellant inconsistent with her testimony. The written report of an expert on questioned documents was introduced by stipulation. It was his opinion that the receipt was prepared in its entirety before Miss Muglia signed it.

Evidence of a similar crime was introduced showing that in 1956 appellant had promised to procure a new automobile for a Mrs. Davidson in exchange for her 1953 Plymouth convertible. She delivered her Plymouth with power of attorney and signed pink slip to appellant and he sold it and thereafter failed to deliver either a new car as promised or the money from the sale of the old one.

Proof of the elements of obtaining money or property by false pretenses will support a conviction of grand theft,

and proof of the making of a promise without the present intent to perform it is sufficient to establish such false pretenses. (*People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271].)

Appellant, through counsel appointed by the court, argues however that several elements of this crime were not established in this case.

The intent to defraud must be proved and the mere failure to perform the promise standing alone is not sufficient. (*People* v. *Ashley, supra,* 42 Cal.2d p. 263.) However, the intent to defraud, i.e. in this case the intention not to perform the promise at the time it was made, is a question of fact to be determined from all of the circumstances of the case. (*People* v. *Frankfort,* 114 Cal.App.2d 680, 697 [251 P.2d 401].) The whole course of conduct indulged in by appellant as testified by Miss Muglia and her roommate could be looked to by the trial court in determining whether he made his original promise with the fraudulent intent not to perform it. He promised both Miss Muglia and her roommate that he would deliver a car to Miss Muglia after, according to his own testimony, he knew that he could not procure one. The evidence of the similar fraudulent transaction with another is also evidence from which his fraudulent intent in this transaction could be inferred. Taking the evidence as a whole it amply supports the implied finding that when appellant first promised Miss Muglia to get her a new car he had no intention of doing so.

Her reliance upon his false promise in parting with her $392 check is equally supported, as is his intent to induce her to part with it as a result of his false promise.

Whether or not appellant could in fact have obtained a new Rambler is not determinative of the fraudulent nature of his original promise. If, as the court found, at the time he made the promise he had the fraudulent intent not to perform it, the possibility or impossibility of actual performance could not alter the fraudulent intent in making the promise with the present intent that it would not be performed. Nor is the fact that Miss Muglia first suggested the transaction inconsistent with the finding that appellant took advantage of her proposal to secure her money by a false promise.

The complaining witness' testimony was sufficiently corroborated as required by section 1110, Penal Code. Apart from the other testimony the evidence of a similar fraudulent transaction involving the owner of another automobile in

1956 is sufficient for that purpose. (*People* v. *Ashley, supra,* 42 Cal.2d p. 268.)

The trial court chose to believe Miss Muglia's testimony concerning the receipt which bore her signature and her testimony that appellant did not repay her $1,350. In this respect appellant's testimony and the report of the questioned-documents expert produced only a conflict of testimony which it was the court's function to resolve. ■ The fact that this expert was employed in the Bureau of Criminal Investigation or the office of the attorney general did not bind the People by his testimony or require the court to find in accordance with his opinion.

■ Appellant applied to the court for probation and the record makes it clear that while the judge was inclined to the view that the case was a proper one for probation he concluded that he had no power to grant probation because appellant had been twice convicted of a felony. (Pen. Code, § 1203.) This section prohibits the granting of probation "to any defendant unless the court shall be satisfied that he has not been twice previously convicted of felony in this State nor twice previously convicted in any other place or places of public offenses which would have been felonies if committed in this State."

The previous conviction of one felony in this state is admitted. The appellant testified that in 1952 in Texas he was convicted in a federal court "of interstate transportation of stolen, forged, counterfeit and falsely made stocks, bonds and securities."

The question presented is whether this crime would have been a felony if committed in this state.

The federal statute apparently involved reads in part as follows:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; . . .

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both." (18 U.S.C. § 2314.)

Respondent submits that this code section is comparable to section 497 of our Penal Code.

"Every person who, in another state or country steals or embezzles the property of another, or receives such property knowing it to have been stolen or embezzled, and brings the same into this state, may be convicted and punished in the same manner as if such larceny, or embezzlement, or receiving, had been committed in this state."

It is plain that that portion of the federal statute embraced in the second paragraph above quoted, i.e. dealing with the transportation of "falsely made, forged, altered, or counterfeited securities" by no stretch of the imagination could be held to find a counterpart in section 497 Penal Code.

If the appellant may be said to have admitted a conviction of violating the first paragraph (transporting goods, wares, merchandise, securities or money "knowing the same to have been stolen, converted or taken by fraud"), we are still satisfied that that paragraph does not state an offense similar to the offense stated in section 497 of our Penal Code.

The gist of the federal offense is the *transportation* of goods etc. "knowing the same to have been stolen." The gist of the offense described in section 497 is the *receiving* of property "knowing it to have been stolen" and the subsequent transportation of such property into this state, in which event the defendant "may be convicted and punished in the same manner as if such . . . *receiving*, had been committed in this State."

The federal offense is committed if a person *transports* the property *knowing it to be stolen* even though he may have originally received it without knowing that it was stolen. But the offense defined in section 497 of our code is only committed if the defendant who afterwards transported it into this state first "receives such property knowing it to have been stolen."

Statutes of the character of the provision of section 1203 Penal Code here under discussion are not to be extended to include conviction of offenses in other jurisdictions which do not include all of the elements of some felony known to our law. (*In re McVickers*, 29 Cal.2d 264, 267 [176 P.2d 40] and cases cited.)

The judgment is reversed solely to permit the trial court to act upon appellant's application for probation on its merits.

Kaufman, P. J., and Draper, J., concurred.