[Crim. No. 6924. Third Dist. Dec. 7, 1973.]

In re DONALD GENE BOAG on Habeas Corpus.

**COUNSEL**

James F. Smith and Fred Hiestand for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye and Robert D. Marshall, Deputy Attorneys General, for Respondent.

## OPINION

**FRIEDMAN, J.**—Petitioner, an inmate of Folsom Prison, seeks a writ of habeas corpus to require removal from his prison records of an entry on a form designated CDC 128-A. The entry is dated December 12, 1972, and reads as follows: "On this date the Subject was implicated in an unauthorized meeting in the Folsom Library. He was advised not to participate in any more unauthorized group meetings. Subject was given a copy of this document in person."

After receiving a copy of the entry, petitioner filed with the warden a request for its removal. The warden responded as follows: "I have reviewed all reports connected with this incident and I am of the opinion that the evidence is irrefutable that an [un]authorized meeting was being held in the library in which you were a participant. The 128A simply documents this fact and does not represent a disciplinary charge, as such.

"I am therefore taking action to deny your request."

Petitioner contends that the inclusion of the form 128-A in his file was a disciplinary action by the prison authorities which unfavorably affects his custody conditions and damages his chance for parole; that this "discipline" was imposed without providing him advance knowledge of the restriction which he supposedly violated; that he was entitled to procedural due process, i.e., notice and hearing, before the entry was placed in his file; that, in attending the meeting in the prison law library, he was pursuing his constitutional right of access to the courts and of securing inmate assistance; that the imposition of adverse consequences unlawfully trenches upon his exercise of constitutionally protected prerogatives.

According to the uncontroverted allegations, petitioner and 10 other Folsom inmates held a meeting in the prison law library for the purpose of forming a chapter of the National Lawyers Guild and to forward prisoners' rights litigation; after 1½ hours two correctional officers entered and ordered the group to disband. In his return the warden does not point to any rule or regulation prohibiting meetings in the prison library or elsewhere or requiring advance permission for inmate meetings. The Director of Corrections may prescribe rules and regulations for the government of prisons. (Pen. Code, § 5058.) A copy of rules describing duties and obligations of prisoners must be furnished to each inmate. (Pen. Code, § 2080.) Case records of all prisoners must be maintained and are to include data with respect to the classification, treatment, employment, training and discipline of each prisoner. (Pen. Code, § 2081.5.)

█ Promulgation of a formal regulation prohibiting meetings in the prison library was not a prerequisite to the action taken in this case. Statutes calling for prison regulations do not demand that rule books cover every conceivable phase of inmate behavior. Beyond the coverage of formally adopted rules is a set of elementary, generally understood standards of inmate behavior. The prison law library is no more designed for assembly and group discussion than is the prison kitchen or prison hospital. It is designed to provide research material and facilities for drafting legal papers and briefs. (*In re Allison,* 66 Cal.2d 282, 291 [57 Cal.Rptr. 593, 425 P.2d 193]; *In re Harrell,* 2 Cal.3d 675, 695 [87 Cal.Rptr. 504, 470 P.2d 640].) It is a place of individual study and not collective assembly and debate. To any person of ordinary understanding, group discussion and debate are inconsistent with the library's prime purpose. The constitutional protection of inmates' access to the courts does not foreclose reasonable regulation of the time and location of such activities. (*Johnson* v. *Avery,* 393 U.S. 483, 490 [21 L.Ed.2d 718, 724, 89 S.Ct. 747]; *In re Harrell, supra,* 2 Cal.3d at p. 694.) Absent permission to meet in the library, the meeting in which petitioner participated was "unauthorized" and known by its participants to be unauthorized.

Had the meeting of December 12 taken place in a more appropriate location, the warden might be on more shaky ground. In his return to the order to show cause, he points to no promulgated rule fixing conditions for inmate meetings or demanding advance permission.[1] Only because petitioner and his companions chose an obviously unsuitable part of the institution could their meeting be called "unauthorized."

Prior notice and hearing were not prerequisites to the notation in petitioner's file. █ Courts should protect prison inmates against arbitrary official action. (*In re van Geldern,* 5 Cal.3d 832, 836 [97 Cal.Rptr. 698, 489 P.2d 578].) They should also be cautious and selective in fastening formal due process requirements on prison disciplinary activities. (See *Sostre* v. *McGinnis,* 442 F.2d 178, 194-195.) █ As the report of an infraction of good behavior, the entry in petitioner's file forms part of a body of data bearing on future classification, placement and parole decisions. (Pen Code, § 2081.5; *In re Harrell, supra,* 2 Cal.3d at pp. 692-693; *In re Streeter,* 66 Cal.2d 47, 50-51 [56 Cal.Rptr. 824, 423 P.2d 976].) Coupled with other adverse reports and recommendations, it could conceivably result in future decisions adverse to petitioner. In itself the entry

---

[1]Contrast, *In re Harrell, supra,* 2 Cal.3d at page 694, which enumerates a series of local (as contrasted with departmental) regulations for use of the law library at San Quentin prison.

reports a minor infraction of good behavior. Having a foundation in actual fact, the entry was not arbitrary. It cannot, for example, be equated with a parolee's loss of physical liberty. (See *Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) It falls far short of those grave decisions which inflict a "grievous loss" and evoke the Fourteenth Amendment's demand for prior notice and hearing.[2]

■ Finally, we reject petitioner's claim that the entry trenches upon his constitutional right of access to the courts. A prisoner's right to have the assistance of fellow inmates in pursuing legal remedies is conditional; it arises only when the state fails to provide reasonable alternatives. (*Johnson* v. *Avery, supra,* 393 U.S. at p. 490.) Petitioner fails to show that breakup of the meeting left him no alternative means of pursuing his legal remedies. (See *Johnson* v. *Avery, supra,* 393 U.S. at pp. 489-490 [21 L.Ed.2d at pp. 723-724].) He makes no showing that he has been deprived of access to attorneys or to inmates who dispense legal assistance. Exclusion of the prison law library as the locale of inmate meetings was no more than an exercise of the prison officials' authority to regulate the library's use without unreasonably impeding inmates' access to the courts.

The petition is denied and the order to show cause discharged.

Richardson, P. J., and Thompson, J.,* concurred.

---

[2]*In re Minnis,* 7 Cal.3d 639, 649-650 [102 Cal.Rptr. 749, 498 P.2d 997]; cf. *In re Prewitt,* 8 Cal.3d 470, 473-474 [105 Cal.Rptr. 318, 503 P.2d 1326]. Petitioner cites federal court decisions which comment upon the obvious proposition that adverse classification and parole determinations may result from records reflecting unfavorably upon the inmate's institutional history. See, e.g., *West* v. *Cunningham,* 456 F.2d 1264; *Hudson* v. *Hardy,* 424 F.2d 854 [137 App.D.C. 366]; *Black* v. *Warden, U. S. Penitentiary,* 467 F.2d 202; *Clutchette* v. *Procunier,* 328 F. Supp. 767. The proposition is adequately demonstrated by section 2081.5 of the California Penal Code and needs no support in judicial dicta. None of the authorities cited by petitioner establishes criteria for drawing a line between institutional decisions which call for procedural due process and those which do not.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.