[Crim. No. 2165. Fifth Dist. Feb. 25, 1975.]

In re OSCAR S. CONTRERAS on Habeas Corpus.

**COUNSEL**

Benjamin R. Winslow, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Robert D. Marshall and Ramon de la Guardia, Deputy Attorneys General, for Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Petitioner is confined in the California Correctional Institution, Tehachapi, under a judgment of conviction of violating Health and Safety Code section 11500 (now § 11350) (possession of heroin), entered upon his plea of guilty in the San Diego Superior Court

on February 28, 1972. On March 20, 1972, probation was denied and he was sentenced to state prison for the term prescribed by law; the term has been established at two to ten years, which is the appropriate term for a person convicted of violating Health and Safety Code section 11500 without any prior convictions.

Petitioner suffered two prior convictions under federal law which he alleges to be invalid and challenges (1) the designation of his status in the records of the Department of Corrections as a "third termer," and (2) the alleged use of the two prior convictions in sentencing proceedings to deny him probation. Neither of the convictions was alleged as a prior in the information or proven at trial, but they were referred to in the probation report.

## THE PRIOR CONVICTIONS

Initially, we note that petitioner has failed to show that one of his prior federal convictions was reversed or set aside. With regard to this conviction, the record before us shows that in 1967 he was convicted of failing to register as a narcotics violator when crossing the border of the United States, in violation of 18 United States Code section 1407, was sentenced to federal prison, and was released from prison on August 9, 1968. In sum, 18 United States Code section 1407, subdivision (a) required a citizen to register when departing from or returning to the United States if he was "addicted to" or "use[d] narcotic drugs" or "who ha[d] been convicted of a violation of any of the narcotic . . . laws of the United States or any State thereof . . . ."

18 United States Code section 1407 was declared unconstitutional in 1967 in *Weissman* v. *United States* (9th Cir. 1967) 373 F.2d 799, 803, only as to the part pertaining to a "user of narcotic drugs" (at p. 803), the court stating that the statute had been held constitutional as to addicts and persons previously convicted of narcotic offenses (at p. 800). Thus, the decision was limited to the term a "user of narcotic drugs" (at pp. 803-804).

Petitioner has not alleged or shown that he was convicted under section 1407 as a "user of narcotic drugs" nor has he shown that he was released in 1968 as a result of the *Weissman* holding.

Since the burden is on the petitioner to show the invalidity of his conviction, we ignore the alleged but unproven infirmity of this conviction.

The other conviction which is conceded to be invalid was for smuggling marijuana in violation of 21 United States Code section 176a, as a result of which petitioner spent 16 months in a federal prison. The conviction was on October 30, 1959, and was reversed on appeal on April 19, 1961, because the evidence presented was the product of an illegal search. The charges were thereupon dismissed.

For the aforementioned reasons the cause will be discussed and disposed of based upon the assumption that only the conviction of October 30, 1959, is invalid.

### "Third Termer" Status[1]

█ References to prior penal convictions and incarcerations appear in several places throughout an inmate's record. A brief note of "prisoner status" i.e. "first termer," "second termer," "third termer" etc., as the case may be, without more, is placed on the "cumulative case summary" which is the first page of a prisoner's total file. Like reference is made elsewhere in the file such as in the "CIR Prison Term" and "Social Evaluation," usually with a more detailed explanation concerning the nature of any prior offense and conviction and its ultimate disposition on appeal or in collateral proceedings.

Petitioner challenges the administrative practice of the Department of Corrections in including within the "termer status" designation terms served in whole or in part pursuant to prior convictions which have been reversed or otherwise declared illegal. Petitioner argues that the designation is inaccurate and its use establishes a stigma which has a subtle if undetermined effect upon his parole eligibility; in support thereof, he points to the fact that he had been denied parole at hearings on July 30, 1973, in May 1974, and on August 22, 1974. In particular he notes the statement of the Adult Authority upon its May 1974 denial of parole which was obviously based, in part, upon his termer status. The Authority stated: "Denial is based on his 3rd termer status, 16 yr. history of narcotics use, long arrest history and great likelihood that he will return to narcotics."

Initially, it is evident that petitioner's prior convictions at issue here were not considered or used by the Adult Authority to fix a minimum

---

[1]Petitioner has proceeded on the assumption that both prior convictions are invalid. However, assuming the 1967 conviction to be valid, the "third termer" designation is still inaccurate because of the-invalid 1959 conviction, thereby rendering the discussion herein germane to petitioner's case.

term before *eligibility* for parole could be established. Rather, the issue here, like the issue in *In re Streeter* (1967) 66 Cal.2d 47, 50 [56 Cal.Rptr. 824, 423 P.2d 976], involves a situation where California "penal sanctions" depend upon challenged prior convictions only in the sense that the Adult Authority, in its administration of the indeterminate sentence law, has or may have such prior convictions within its contemplation. In other words, the prior convictions were used to determine a prisoner's "fitness" for parole rather than "eligibility" for parole.

It is clear to us that both the statutory mandate and prior case law authorize the Department of Corrections to maintain an accurate and complete record of an inmate's personal and social history that may relate to the institutional or correctional program followed for each prisoner (see Pen. Code, § 2081.5), which includes: (1) ". . . all pertinent circumstances of his life and the antecedents of the violation of law because of which he has been committed to prison." (Pen. Code, § 5068), and (2) ". . . a scientific study of each prisoner, his career and life history, the cause of his criminal acts . . ." (Pen. Code, § 5079). Both *In re Streeter,* (1967) *supra,* 66 Cal.2d 47 [56 Cal.Rptr. 824, 423 P.2d 976], and *In re Wilkerson* (1969) 271 Cal.App.2d 798 [77 Cal.Rptr. 340] hold that the Adult Authority may maintain records of prior convictions, though invalid, in an inmate's social history as "a part of the comprehensive body of material on the basis of which the Adult Authority's 'entire discretion' as to term-fixing and parole is to be exercised." (See *In re Streeter, supra,* at pp. 50-51.)[2]

Thus the issue is narrowed to whether the department should be permitted to indicate termer status with the simple appellation "third term," "second term," etc., as the case may be, without immediately accompanying such designation with all pertinent information surrounding any involved conviction, including all subsequent dispositions. We think that such a simplistic label should not be permitted where it includes invalid convictions, primarily because such a designation is a half-truth, incomplete, and inherently harbors a great potential for misuse.

"Courts should protect prison inmates against arbitrary official action." (*In re Boag* (1973) 35 Cal.App.3d 866, 869 [111 Cal.Rptr. 226].)

---

[2]These complete records should permit, in accordance with the department's alleged long-standing administrative practice, the use of information as to the number of times an inmate has been in prison for the purpose of classification for housing, for separating such persons from the unsophisticated and naive prisoners, and as predicters of future behavior and potential.

Included under the protective umbrella of that concept is the duty to protect against the maintenance of inaccurate or incomplete information which may vitally affect a prisoner's status. While the department may keep information on prior invalid convictions, that information should be recorded accurately and completely so as to not unduly expose the inmate to its misuse or misinterpretation. We have concluded that a simple designation of "third termer," or "second termer," etc., as the case may be, to the extent that the designation *is based on invalid prior convictions,* runs that risk and, without more, may have the effect of a stigma or label which may be sufficient to tip the scales against the granting of an earlier discretionary parole date. Nothing in *In re Streeter, supra,* or in *In re Wilkerson, supra,* authorizes the keeping of incomplete or inaccurate records.

## THE SENTENCING HEARING

The probation report before the court at the time of petitioner's sentencing recommended that he be sentenced to state prison. It referred to the 1959 smuggling conviction with the notation "It appears that this conviction was reversed by the Court of Appeals after the defendant had served 16 months at Terminal Island."

Also, in addition to referring to the 1967 failure to register offense, it listed a narcotics offense on December 24, 1961, upon which petitioner served county time, and a narcotics offense on May 14, 1965, for which petitioner served county time. The report also noted:

"There was only a small amount of heroin involved, however, since the defendant was participating in the Methadone Maintenance Program at the time it would appear likely that he was in fact in possession of the heroin with the intention of selling it. The Probation Officer has been informed that the defendant had been selling heavily for at least two months prior to his arrest."

and

"The defendant has a long record involving narcotics, including two terms in a Federal Correctional Institution. Apparently he does not learn from experience.

"The Probation Officer has considered recommending that the defendant be referred pursuant to 3051 W&I to determine if he is a narcotic addict. However, this question has already been answered as he would not have been included in the Methadone Program unless he were addicted.

"In the opinion of the Probation Officer, the defendant poses a definite danger in the community and due to his attitude is not amenable to probation. If the defendant is indeed addicted, adequate rehabilitation facilities are available in the State Prison System."

It is observed that there is no indication that the trial court acted to deny probation to petitioner because of ineligibility under Penal Code section 1203, subdivision (d)(2).[3] In addition to being reversed on appeal, the 1959 conviction for smuggling would have been ineligible for the purpose of denying probation under the above section inasmuch as there was no equivalent offense in the California law; section 1203, subdivision (d), only includes offenses from other jurisdictions whose elements correspond to all the elements of some felony known to California law. (*People* v. *Christenbery* (1959) 167 Cal.App.2d 751, 756-757 [334 P.2d 978].)[4]

Additionally, the probation report expressly referred to the invalidity of the 1959 conviction. We cannot assume that the trial court used the reference to a known invalid conviction for an improper purpose. ■ As was said in *People* v. *Ozene* (1972) 27 Cal.App.3d 905, 915 [104 Cal.Rptr. 170]: "It is also established that the report of the probation officer is not binding upon the trial court (*People* v. *Johnson* (1951) 106 Cal.App.2d 815, 816 [236 P.2d 190]; *People* v. *Wahrmund* (1949) 91 Cal.App.2d 258, 262 [206 P.2d 56]), and if the report contains information not proper to be determined by the court, the appellate court must assume that the trial court was not influenced by irrelevant matters (*People* v. *Warren* (1959) 175 Cal.App.2d 233, 247 [346 P.2d 64])." (See also *People* v. *Keller* (1966) 245 Cal.App.2d 711, 715 [54 Cal.Rptr. 154].)

■ It is evident that the court exercised its discretion based on the entire record. During the hearing the court made no express reference to the prior invalid conviction. It clearly indicated that petitioner's long

---

[3]Penal Code section 1203, subdivision (d)(2) provides:

"(d) Except in unusual cases where the interests of justice demand a departure, probation shall not be granted to any of the following persons:

" . . . . . . . . . . . . . . . . . .

"(2) Any person who has been previously convicted once in this state of a felony or in any other place of a public offense which, if committed in this state, would have been punishable as a felony.

[4]It is also noted that the only California statute similar to the federal statute under which petitioner's *1967 conviction* was based is Health and Safety Code section 11853 (now § 11594), a misdemeanor, and as such would be ineligible for consideration under Penal Code section 1203, subdivision (d)(2).

history of involvement with narcotics, and not his prior invalid conviction, was the determinant factor in sending him to prison where he could get help, rather than granting probation. (See *People* v. *Ozene, supra; People* v. *Keller, supra.*)

Thus, as contrasted to the situation in *In re Huddleston* (1969) 71 Cal.2d 1031 [80 Cal.Rptr. 595, 458 P.2d 507], and other cases cited by petitioner (see *United States* v. *Tucker* (1972) 404 U.S. 443 [30 L.Ed.2d 592, 92 S.Ct. 589]; *In re Haro* (1969) 71 Cal.2d 1021 [80 Cal.Rptr. 588, 458 P.2d 500]; *In re Dabney* (1969) 71 Cal.2d 1 [76 Cal.Rptr. 636, 452 P.2d 924]; *In re Caffey* (1968) 68 Cal.2d 762 [69 Cal.Rptr. 93, 441 P.2d 933]), the court considered and rejected probation as an act of informed discretion, on its merits, and in so doing was not acting upon misinformation or untrue assumptions as to the validity of the 1959 conviction. Therefore, to return the case for further sentencing proceedings would be an idle act and "an exercise in futility that [would serve] no useful purpose other than mere bookkeeping." (*People* v. *Francis* (1969) 71 Cal.2d 66, 79 [75 Cal.Rptr. 199, 450 P.2d 591].)

Let a writ of habeas corpus issue directing the Department of Corrections to modify its designation of petitioner's termer status in his prison record in accordance with the views expressed herein; relief is otherwise denied.

Gargano, J., and Franson, J., concurred.