Opinion
ALARCON, J.
Defendant was convicted of violation of Penal Code section 484, petty theft (three counts), Business and Professions Code section 9842, failure to prepare a proper invoice (two counts) and Business and Professions Code section 9843, failure to return replaced *Supp.27 parts (one count). On appeal, defendant contends that the evidence is insufficient as to each count.[1]

Facts:

Defendant’s petty theft convictions resulted from business transactions with three customers of defendant’s appliance sales and service company, Hecsa Refrigeration. The facts concerning each theft victim are set out below.

Consuelo A lar con:

On or about January 2, 1975, Mrs. Alarcon noticed that her Philco refrigerator was making a loud noise. She selected defendant’s company from an advertisement in the yellow pages of her telephone directory and made an appointment for inspection of her refrigerator. On January 2 or 3, defendant came to Mrs. Alarcon’s home, inspected the refrigerator, diagnosed the problem, and offered to repair it for $105. Defendant informed Mrs. Alarcon that the repair work would be guaranteed for 60 or 90 days.[2] He returned to her house later that afternoon and worked on the refrigerator. He informed her that he had replaced the automatic timer on the refrigerator, and presented her with a statement for $105.97. She paid the bill, obtained a receipt, and was told to call him within 10 days if there were further problems. Defendant did not give to Mrs. Alarcon the timer he had removed from her refrigerator.
Thereafter, Mrs. Alarcon telephoned Hecsa Refrigeration approximately three times, complaining that the refrigerator was not working properly. Each time the person she spoke to assured her that someone would be out to repair the refrigerator, but no one came. Two or three weeks after January 2, 1975, Mrs. Alarcon called a second repairman, *Supp.28 who replaced the automatic timer installed by defendant and advised her that defendant had not installed a Philco timer.

Mario Rodriguez:

On October 7, 1974, the defendant and a Mr. Romero went to Mr. Rodriguez’s home in answer to a telephone call from Mr. Rodriguez asking for service to his refrigerator. He was told that the defrost timer needed replacement and that someone would return the next day with the part to repair the refrigerator. The following day, Mr. Romero installed a new timer, but when Mr. Rodriguez asked for the old part, it was not returned to him. Mr. Rodriguez paid $66.07 for the services, and was told there was a 30-day guarantee on parts and a 90-day guarantee on labor. The same guarantee provisions were contained on the written receipt given to Mr. Rodriguez, which provides: “All parts installed by us are guaranteed ninety days. The above is guaranteed thirty days.”
Approximately two weeks later, Mr. Rodriguez began telephoning Hecsa Refrigeration, asking that someone come back to fix the refrigerator, which was still not operating properly. He called approximately 25 times. On one occasion, defendant promised he would return to Mr. Rodriguez’s house the next day, but no one ever came.
Felicitas Uranga:
On September 2, 1974, Mrs. Uranga purchased a combination sink-stove-refrigerator from Hecsa Refrigeration for $93.45. The combination was to have been delivered within three days, but was not delivered until after the passage of approximately thirty days and numerous telephone calls. About one week after delivery, Mrs. Uranga began telephoning Hecsa, complaining that the refrigerator did not work properly. She telephoned approximately 40 times altogether in an effort to secure delivery and then in a subsequent effort to have the combination repaired. Defendant attempted to, but did not, repair the refrigerator unit, and ultimately Mrs. Uranga disconnected the unit and bought another to replace it.
Appellant contends on appeal that the evidence is insufficient to show that he sold the refrigeration unit to Mrs. Uranga, or that it was guaranteed by him. The receipt provided by defendant to Mrs. Uranga describes the item sold as a “stove and sink.” However, the victim, in her testimony, described the unit as follows:
*Supp.29 “It is a small sink with two burners, stove and a little compartment for canned goods plus a freezing department, a refrigerator department.”
Although the receipt does not identify the unit as containing a refrigerator, appellant testified that shortly after the sale, Mrs. Uranga called him and complained that the refrigerator was not working properly. Appellant stated:
“Then I told her right on top of the freezing compartment there was a little dial, to lower down to No. 3 or 4 to get the refrigerator—she said that she can’t do it. I told her, ‘Okay. On the way over to my house tonight when I go home, I will pass by, and I will adjust the control.’ ”
The fact that the combination sink sold to Mrs. Uranga was not described on the receipt as containing a refrigerator is not sufficient to overcome the testimony of both the victim and appellant that the refrigerator unit was included in the sale and the implications from defendant’s conduct that he initially treated the refrigera tor unit as if it were covered by the guarantee.

Theft by False Pretenses

Appellant contends that there is not sufficient evidence to support the convictions for theft. The trial court explained in its memorandum decision that the basis for those convictions was a finding that defendant’s conduct toward the victims, Alarcon, Uranga, and Rodriguez constituted the taking of money under false pretenses.
The elements of the crime of obtaining property by false pretenses were set out in People v. Brady (1969) 275 Cal.App.2d 984 at page 996 [80 Cal.Rptr. 418], as follows: “To establish the commission of the crime of ... theft sounding in false pretenses, the following factors must be proved: (1) The making of a false representation; (2) knowledge that the representation is false with intent to deprive the owner of his property; and (3) proof that the owner was actually defrauded and that he parted with his property in reliance on false representations.”
The trial court concluded that as to each of the above-named victims, defendant represented that the work performed was guaranteed, that such representation was false, that the customer relied on such representation, which was at least part of the inducement for the payment of money to the defendant, and that at the time each representation was made, defendant knew that he did not intend to honor it. We agree.
*Supp.30 1. Promise made without intent to perform:
A false promise can be the basis of a criminal action for theft. Prior to 1954, California authorities were conflicting concerning whether a promise to perform an act in the future could be a “false representation” under Penal Code section 484. Then in People v. Ashley (1954) 42 Cal.2d 246 [267 P.2d 271], the court held, at page 262, that “. .. a promise made without intention to perform is a misrepresentation of a state of mind, and thus a misrepresentation of existing fact, and is a false pretense within the meaning of section 484 of the Penal Code.”
In the subsequent case of People v. Gibson (1969) 275 Cal.App.2d 198, at page 208 [79 Cal.Rptr. 693], the court explained; quoting from People v. Otterman, 154 Cal.App.2d 193 at page 204 [316 P.2d 85]: “ ‘While mere nonperformance of a promise is not enough to constitute a fraudulent pretense within the law of grand theft [citation], a promise made with intent not to perform does constitute a false pretense [citation], and the question of intent to defraud is one of fact....’ ”
The evidence must establish that failure to keep the promise was not “merely a commercial default.” (People v. Poyet (1972) 6 Cal.3d 530 at p. 537 [99 Cal.Rptr. 758, 492 P.2d 1150].)
In the instant case, defendant “guaranteed” to each of the victims that' defects in parts or labor would be cured by him. Such a guarantee is a promise to perform an act in the future. Webster’s New International Dictionary defines a “guarantee” as: “an agreement by which one person promises to make another secure in the possession, enjoyment, or the like, of something.”
Our research has disclosed no cases discussing the workmanship guarantee as a basis for an action in theft. However, failure to honor a guarantee (i.e., a promise that if services were not properly performed, the money paid for them would be refunded) was held to amount to theft in the case of People v. Henderson (1947) 79 Cal.App.2d 94 [179 P.2d 406]. In the Henderson case, defendant was convicted of 10 counts of grand theft. The following transactions, constituting two of the ten counts, were based on defendant’s “guarantee” that money would be refunded to the victim. In count one, defendant promised Mr. and Mrs. Swift, -who paid $1,000 as a down payment on a construction contract, that if he could not locate for them a piece of property satisfactory to them, all money paid under the contract would be refunded without penalty. In count ten, defendant made the same promise to a Ms. Barnes, who had paid $2,000 down payment on a similar construction contract. *Supp.31 In both instances, defendant neither performed under the agreement nor refunded the money.
The court concluded, at page 116, that the evidence “. . . is ample to prove, every element necessary to sustain the convictions on all ten counts of grand theft.”
Although the court in Henderson did not specifically discuss the problem before us, it by implication concluded that a guarantee is a type of promise which, if given without intent to perform, will form the basis for a charge of theft, if the other elements of that offense are present. We specifically so hold.
2. Evidence of intent:
Although intent to defraud is an essential element of theft by false pretenses, such intent can be inferred from the facts. (People v. Conlon (1962) 207 Cal.App.2d 86, 92 [24 Cal.Rptr. 219].) In People v. Carlin (1960) 178 Cal.App.2d 705 at page 714 [3 Cal.Rptr. 301], the court held that evidence of other transactions in which defendant had been involved was admissible. The similarity of promises made and not kept is circumstantial evidence of intent to defraud. (See also People v. Christenbery (1959) 167 Cal.App.2d 751 [334 P.2d 978].)
In the instant case, eight victims testified concerning transactions with the defendant. In each case, promises were made by defendant concerning delivery, repair, or quality of parts or workmanship, which promises were not kept. The evidence clearly supports the conclusion of the trial court that defendant, at the time he offered the said guarantees, did not intend to honor them.
3. Reliance on the promises:
As set out hereinabove, all three fraud victims testified that they paid money to defendant in exchange for goods or services and in reliance on his promise of a guarantee. There is no question but that there is sufficient evidence of the existence of the third element of the crime of theft by false pretenses, i.e., “proof that the owner was actually *Supp.32 defrauded and that he parted with his property in reliance on false representations.” {People v. Brady, supra, at p. 996.)
The other grounds of error cited by appellant are without merit.
The judgment is affirmed.
Cole, P. J., and Wenke, J., concurred.

 The opening brief, while challenging the sufficiency of evidence as to each count, is concerned primarily with whether the corpus delicti of theft by false pretenses was established. Brief mention is made of the three counts involving Business and Professions Code sections 9843 and 9842. However, as the appellant points out, questions of credibility cannot be raised before this court. The evidence presented by the People was clearly sufficient as to such counts, and appellant does not claim otherwise. His argument that the law should not apply where the consumer does not avail himself of the protection afforded by the statute must be addressed to the Legislature and not us.

 Appellant contends that there is insufficient evidence that a guarantee was given to Mrs. Alarcon. However, the record reflects the following testimony:
“Q. When you asked him about how much it would cost, did you have any discussion about a guarantee as to his work or parts?
A. Yes, ... He said it would cost approximately $105 and that there was a guarantee. ... I am not too sure whether he said 60 days parts or 90 days parts.”