**ESTATE of Martin M. MELCHER, etc., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**ESTATE of Martin M. MELCHER, etc., Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent- Appellant.**

Nos. 71–1650, 71–1651, 71–2377 and 71–2378.

United States Court of Appeals, Ninth Circuit.

March 20, 1973.

Hilbert P. Zarky (argued), of Mitchell, Silberberg & Knupp, Los Angeles, Cal., for petitioners-appellants.

Janet R. Spragens, Atty. (argued), Thomas L. Stapleton, Meyer Rothwacks, Attys., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and ZIRPOLI,* District Judge.

---

* The Honorable Alfonso J. Zirpoli, United States District Judge for the Northern District of California, sitting by designation.

1. Section 23. *Deductions from Gross Income.* [1939 Code.]
   In computing net income there shall be allowed as deductions: . . . .
   (b) *Interest.* All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry

## OPINION

ZIRPOLI, District Judge.

Appellants Doris Day Melcher and the estate of her deceased husband, Martin M. Melcher, appeal parts of a Tax Court decision assessing tax deficiencies for the years 1953 through 1956 and finding an overpayment for the year 1957. In those years Martin Melcher and his wife filed joint tax returns, which included income and deductions claimed on account of a tax avoidance scheme, a Livingstone-type transaction, in which the taxpayers claimed deductions for large interest payments for an alleged indebtedness incurred in connection with the "purchase" of Federal Land Bank Bonds, and claimed a capital gain at the time the bonds were sold. This court has consistently held that in a Livingstone-type transaction there is no real purchase of bonds, no genuine indebtedness incurred, and consequently, no deductible interest expense created. *See* Cahn v. Commissioner, 358 F.2d 492 (9th Cir. 1966); Williams v. Commissioner, 323 F.2d 656 (9th Cir. 1963); MacRae v. Commissioner, 294 F.2d 56 (9th Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962); Kaye v. Commissioner, 287 F.2d 40 (9th Cir. 1961). Appellants concede that the Tax Court properly disallowed use of any expenses associated with this scheme as interest deductions pursuant to § 23(b) of the Internal Revenue Code of 1939 [1] or § 163(a) of the Internal Revenue Code of 1954.[2] They argue, however, that the Tax Court erred in not granting post-trial motions seeking to raise the

obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.

2. Section 163. *Interest.* [1954 Code.]
   (a) *General Rule.*—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

issue that the out-of-pocket expenses in the transaction are deductible as a theft loss, and in holding that the out-of-pocket expenses are not deductible as a capital loss.

### 1. Theft-loss Deduction

After the death of Martin Melcher in April, 1968, disputes arose between Doris Day Melcher and Jerome Rosenthal, the attorney who represented the Melchers in the Tax Court, concerning alleged mismanagement of the Melchers' financial affairs, breaches of fiduciary relationships, and improper representation of the Melchers' interest in the Tax Court. Subsequent to the trial in the Tax Court, but before entry of the Findings of Fact and Opinion, Doris Day Melcher dismissed Rosenthal and engaged present counsel. Following entry of the Tax Court opinion, motions were filed asking the court to reopen the proceedings to allow appellants to assert a theft-loss deduction for out-of-pocket expenses incurred in the transaction pursuant to Nichols v. Commissioner, 43 T. C. 842 (1965). We do not hold that Nichols was correctly decided. We need not reach that question, because even if it were, reversal would not be required here.

The motions and accompanying affidavits alleged that Rosenthal was guilty of misconduct in arranging this Livingstone-type transaction for the Melchers, and that Rosenthal purposely chose to omit a Nichols theft-loss claim in order to prevent discovery of his misconduct. The motions first asked that the Findings of Fact and Opinion be modified so as to allow the theft loss for the year 1953 on the basis of the existing record. The motions also requested an opportunity to present further evidence regarding the theft loss for the years 1954 through 1956, and for the year 1953 if the motion to modify were denied. Reopening the hearing for the latter three years, but not for 1953, was necessary, appellants argued, because prior to 1954 theft losses could be deducted in the year sustained, but after 1954, they have had to be deducted in the year discovered. Compare Int.Rev.Code of 1939 § 23(e)[3] with Int.Rev.Code of 1954 § 165(e).[4] The Tax Court initially responded to the motions by requiring that appellants lodge proposed amendments to their petitions and file a short memorandum outlining the number of witnesses and exhibits that would be presented if the matter were reopened, and estimating the number of days of further trial that would be necessary. Thereafter, the Tax Court denied the motions, and later denied a motion to reconsider. Appellants argue that the Tax Court abused its discretion in refusing to reopen the proceedings.

A motion to reopen and hear further evidence is addressed to the sound discretion of the Tax Court, and a denial of such a motion will not be reversed on appeal in the absence of extraordinary circumstances showing a clear abuse of discretion. See Henry Van Hummell, Inc. v. Commissioner, 364 F.2d 746, 751 (10th Cir. 1966), cert. denied, 386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967); Mensik v. Commissioner, 328 F.2d 147, 151 (7th Cir.), cert. denied, 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964). The court readily

3. Section 23. *Deductions from Gross Income.* [1939 Code.]
   In computing net income there shall be allowed as deductions: . . . .
   (e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— . . .
   (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft.

4. Section 165: *Losses.* [1954 Code.]
   (a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

   · · · · ·

   (e) *Theft Losses.*—For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.

agrees with appellants that the judiciary must be sympathetic to claims that an injustice has been perpetrated because an attorney has breached his fiduciary duty to his client, and in a *proper* case a failure to reopen a hearing to consider such a claim might constitute abuse. In the present case, however, the Tax Court's decision not to reopen cannot be reversed, because appellants have failed to show that further hearings would have changed the result. *See* ARC Realty Co. v. Commissioner, 295 F.2d 98, 107 (8th Cir. 1961).

The *Nichols* case does not make a theft-loss deduction available to every taxpayer disappointed by the court's conclusion that sham interest payments in a Livingstone-type transaction are not deductible. See Dooley v. Commissioner, 21 T.C.M. 1633, 1646 (1959), aff'd, 332 F.2d 463 (7th Cir. 1964). Rather, the taxpayer who seeks to salvage even this tax advantage must present "credible evidence that the form of the transaction was of critical importance to [him], and that [he] entered into it only after having been deceived . . . as to its nature." Nichols v. Commissioner, 43 T.C. at 887. Martin Melcher's testimony shows that this is not such a case; he testified that he relied totally on his attorney, made no attempt to understand the transaction, and had no knowledge of the details of the transaction or the applicable tax provisions.

In view of this evidence, it was incumbent upon appellants to proffer evidence in their motion to reopen the proceedings that would overcome the implication of Melcher's testimony that no theft loss resulted and would show that appellants were denied an opportunity to present the issue because of Rosenthal's conflict of interest. It is unclear from the pleadings appellants filed precisely what evidence they intended to produce if the hearing were reopened. Assuming that they were offering to prove everything suggested by the pleadings, the evidence still would not have shown that they are entitled to a *Nichols* theft-loss deduction. Most of the evidence would tend to show only that Rosenthal was guilty of misconduct in other matters he handled for the Melchers; this, of course, does not establish that they experienced a theft in the course of this transaction. The only evidence specifically relating to this transaction is that Rosenthal arranged a Livingstone-type transaction for himself at a lower rate of interest, and thus, a lower out-of-pocket expense, than the rate of interest he arranged for Melcher. The higher interest rate, however, would have resulted in tax savings for Melcher several times the additional out-of-pocket expense if the tax scheme had succeeded. The difference, therefore, may reflect nothing more than the different tax deduction needs of Melcher and Rosenthal; it would not prove a theft by Rosenthal.

In short, even assuming the truth of all the evidence appellants may have intended to proffer, the total record still indicates that Rosenthal recommended that Melcher take advantage of what, at the time, was believed by many competent tax attorneys to be a "tax loophole," and Melcher accepted the advice. *Cf.* Miles v. Livingstone, 301 F.2d 99, 101–102 (1st Cir. 1962). Melcher was certainly no stranger to tax-avoidance schemes, as indicated by his testimony concerning the other issue before the Tax Court. On the basis of the evidence offered, the Tax Court could not conclude, as required for a *Nichols* theft-loss deduction, that Melcher "parted with money on the strength of . . . false representations and [was] thus swindled . . . within the meaning of the criminal law." 43 T.C. at 887. Hence, it was not error for the Tax Court to deny the motions to reopen the hearing.

Although it is unclear, appellants also seem to argue that the court ought to hold that a theft-loss deduction should be allowed for the year 1953 even though appellants were not permitted to amend their pleadings to raise the issue in the Tax Court. This court

clearly has the power to do this. *See* MacRae v. Commissioner, 294 F.2d 56, 59 (9th Cir. 1961), cert. denied, 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962). The evidence, however, as discussed above, does not show that appellants are entitled to a theft-loss deduction.

### 2. Capital-Loss Deduction

Relying on MacRae v. Commissioner, *supra* at 60, appellants argue that the Tax Court erred in holding that the out-of-pocket expenses are not deductible pursuant to § 1234(a)[5] as a loss attributable to the failure to exercise an option to acquire property. There is some question whether *MacRae*, which involved provisions of the Internal Revenue Code of 1939, can be applied to the provisions of the Internal Revenue Code of 1954. *See* Lewis v. Commissioner, 328 F.2d 634, 639–640 (7th Cir. 1964); Brown v. United States, 396 F.2d 459, 465–467, 184 Ct.Cl. 410 (1968); Treas. Reg. 1.1234–1(f) (1959). This issue, however, need not be resolved here, because appellants have not established a right to a deduction even if *MacRae* is still viable.

In *MacRae* the court held that the taxpayer had entered into a contract that allowed him at any time to call in the notes from the lender, cancel the indebtedness, and stop the running of interest. Had he done so, MacRae would not have lost his out-of-pocket expenses, so the court concluded that the loss was deductible pursuant to § 117(g)(2) of the Internal Revenue Code of 1939. In the present case, Melcher had only the limited right to terminate the transaction by giving notice to the lender no less than ten nor more than thirty days prior to October 1, 1957, which was the maturity date of both the note and the purportedly pledged bonds. If Melcher gave the required notice, at that time the bonds would have been sold and the market price applied to the payment of the note.

■ By exercising the option, Melcher could have avoided the interest on the balance owed under the note between the date he acted and October 1, a period of no more than thirty days. This savings, however, would have been offset by the difference in the sale price of the bonds on that date and the sale price on October 1, because near to the time that Federal Land Bank Bonds are to be redeemed at par by the issuer their sale price is approximately the par value less interest for the period between the sale date and the redemption date. Thus, the only possible loss that might have resulted from the failure to exercise the option would be a *de minimus* interest differential—an amount far less than Melcher's out-of-pocket expenses. If such a small loss had been incurred, appellants made no attempt to prove what it was, and they are, therefore, not entitled to deduct it. *See* Factor v. Commissioner, 281 F.2d 100, 110 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S. Ct. 380, 5 L.Ed.2d 365 (1961); Tax Court Rules of Practice 32.

Affirmed.

---

5. Section 1234. *Options to Buy or Sell.* [1954 Code.]
(a) *Treatment of gain or loss.*—Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which has the same character as the property to which the option or privilege relates has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him).
(b) *Special rule for loss attributable to failure to exercise option.*—For purposes of subsection (a), if loss is attributable to failure to exercise a privilege or option, the privilege or option shall be deemed to have been sold or exchanged on the day it expired.