790 F.2d 1463
 58 A.F.T.R.2d 86-5134, 86-1 USTC P 9456
 Foy BRYANT and Kathryn Bryant, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Harvey E. HARTMAN and Beverley J. Hartman, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Douglas G. WEBBER and Betty J. Webber, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Alvin R. WOHL and Donna Wohl, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 84-7781, 84-7783, 84-7784 and 84-7864.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1985.
Decided June 4, 1986.
 
 Michael P. Casterton, Robert L. Gallaway, Wohl, Cinnamon & Hagedorn, Sacramento, Cal., for petitioners-appellants.
 Kenneth Greene, Dept. of Justice, Washington, D.C., for respondent-appellee.
 Appeal from the United States Tax Court.
 Before SKOPIL, FLETCHER and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 The taxpayers in these consolidated cases appeal the Tax Court's decision upholding the Commissioner's determination of deficiencies in their federal taxes, and his assessment of additions to their taxes under 26 U.S.C. Sec. 6653(a) (1982). We affirm.
 
 I. FACTS
 
 2
 These taxpayers, along with many others, invested in domestic beavers during the 1970's. Domestic beavers were first raised in this country in 1925, and domestic beaver ranching has been fairly well established since the 1950's. In the 1970's two individuals, Dennis Crum and Paul Sharp, began marketing beavers to investors. A typical investor purchases between 10 and 40 pairs of adult beavers. The beavers are sold in three categories: proven, those that have produced offspring; unproven, those that have not produced offspring; and yearlings, beavers in their second year of life. The beavers are maintained by ranchers on already existing ranches on behalf of the investors. However, the investor is given a certificate for each of his beavers and is able to identify his animals by tattoos on their feet. The ranchers charge the beaver owners a fee for feed and maintenance of their beavers.
 
 
 3
 The taxpayers purchased beavers as an investment. In each case, the taxpayer was given a document that contained financial projections for the proposed beaver investment. Each projection was for an eleven or twelve year period beginning the day the investment was made and ending when the contract was paid. The projections showed substantial income tax losses during the first six or seven years. But for the tax savings, a negative cash flow was shown for the first four or five years. Taxable income was shown for each year after the seventh year, but projected tax losses for the first seven years exceeded projected taxable income for the later years.
 
 
 4
 The taxpayers each entered into substantially identical contracts with the beaver promoters. All taxpayers except Bryant paid $3,500 per proven pair of beavers and $2,400 per nonproven pair. Bryant paid $3,250 per proven pair of beavers and $2,250 per nonproven pair. In each case, the taxpayer agreed to make a cash down payment and to give a promissory note for the balance of the contract price. The notes bore interest at a stated rate and required annual principal payments of a stated amount. Interest was payable annually in addition to principal, at least in the first years of each contract. However, after the fourth year each contract permitted payments of principal to be made in beavers. The contracts provided that the value of beavers used to repay the notes would be equal to the original stated contract price for the beavers. As a result of this in-kind repayment provision, the taxpayers were required to make only the following cash payments of principal for their investments: Bryant: $7,450 on a $52,000 stated contract price; Hartman: $7,344 on a $61,200 stated contract price; Webber: $14,000 on a $109,200 stated contract price; Wohl: $6,900 on a $68,800 stated contract price. The remainder of the contract price could be paid in beavers. All of the taxpayers, except Bryant, repaid with beavers as soon as their contracts permitted them to do so. For some reason, Bryant continued to repay with money after his contract permitted him to repay with beavers. Each taxpayer took substantial depreciation and interest deductions and the investment tax credit. These deductions and credits were based on a tax basis in the beavers equal to the stated contract prices for the beavers.
 
 
 5
 At the same time these taxpayers were purchasing beavers for $1,200 and $1,750 per animal, Dennis Crum, Paul Sharp, and others were purchasing beavers for prices ranging between $16 and $250 per animal. The majority of these purchases were from ranchers who had no reason to sell animals for substantially less than they were worth.
 
 
 6
 During the years in question the taxpayers had several of their animals die and disposed of others. However, the taxpayers did not report investment tax credit recapture for those years.
 
 
 7
 In his deficiency notice to each taxpayer, the Commissioner disallowed part of the depreciation and interest deductions and determined that the investment tax credit should be recaptured. He determined that some of the taxpayers had additional capital gains and income from the sale of beavers. He also assessed an addition to tax against Bryant under 26 U.S.C. Sec. 6653(a) (1982) for negligent failure to report investment tax credit recapture. In an amendment to his answer in the Tax Court, the Commissioner assessed Hartman, Webber, and Wohl an addition to tax under section 6653(a).
 
 
 8
 The Tax Court determined that the taxpayers had no investment in the beavers to the extent the stated contract price exceeded the fair market value of the beavers. Therefore, it held that the taxpayers' basis in the beavers and the amount of their indebtedness were limited to the fair market value of the beavers. It determined the fair market value of the beavers to be $200 per proven beaver, $137 per nonproven beaver, and $29 per yearling. As a result of these findings, the court disallowed the taxpayers' depreciation and interest deductions[1] and required recapture of their investment tax credit to the extent that each was not supported by basis or debt as determined by the Tax Court. The Tax Court also upheld the Commissioner's assessment of an addition to each taxpayers' tax under section 6653(a).
 
 
 9
 The taxpayers argue that the Tax Court's determinations that their basis in the beavers should be limited to the fair market value of the beavers and that the beaver's value is substantially less than the stated price are clearly erroneous. Hartman, Webber, and Wohl also challenge the assessment of an addition to their tax under section 6653(a) for their failure to report investment tax credit recapture.
 
 II. STANDARD OF REVIEW
 
 10
 The Tax Court's determinations regarding the fair market value of the beavers, the taxpayers' resulting basis in the beavers, and additions to tax under section 6653(a) involve factual findings, which we review under the clearly erroneous standard. Thompson v. Commissioner, 631 F.2d 642, 646 (9th Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981); Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir.1978).
 
 III. BASIS
 
 11
 The claimed deficiencies result principally from disallowance of part of the claimed depreciation and recapture of investment tax credit. Because allowable depreciation and investment tax credit depend on the basis of the asset in question, 26 U.S.C. Secs. 38, 46(c)(1)(A), 167(g) (1982), we first review the Tax Court's findings regarding the taxpayers' basis in these beavers.
 
 
 12
 The basis of property for tax purposes is the cost of the property. 26 U.S.C. Sec. 1012 (1982). However, the courts have determined that in certain circumstances, a taxpayer's stated cost for an asset does not reflect the true economic cost of that asset to the taxpayer and will be ignored for purposes of determining the basis of the asset. See, e.g., Estate of Franklin v. Commissioner, 544 F.2d 1045 (9th Cir.1976) (basis does not include that portion of nonrecourse debt that unreasonably exceeds the value of the underlying property); Lemmen v. Commissioner, 77 T.C. 1326, 1348 (1981) (basis does not include that portion of the stated purchase price of an asset that exceeds the value of the asset, if peculiar circumstances induce the taxpayer to pay more for the asset than its value).
 
 
 13
 The Tax Court found that the stated purchase price for the beavers involved in this case did not reflect the taxpayers' true economic cost for the beavers. It found that because the taxpayers could use beavers to pay the major portion of their promissory notes, they had no incentive to obtain the lowest possible price. In fact, the taxpayers had an incentive to agree to inflated prices to obtain the favorable tax benefits the sellers used in their projections to promote the investment in beavers.
 
 
 14
 In reaching this conclusion, the Tax Court relied on Lemmen v. Commissioner, 77 T.C. 1326 (1981). In Lemmen, a taxpayer purchased two herds of cattle, one for $40,000 and one for $20,000. The seller agreed to maintain and care for the cattle in exchange for some of the calves produced during the term of the contract. The Commissioner disallowed part of the depreciation claimed by the taxpayer on the ground that the claimed purchase price for the cattle exceeded their fair market value. The Tax Court determined that the fair market value of the herds was $7,000 and that the fair market value of the contract to maintain the cattle was well in excess of the agreed exchange for calves. Because cattle are depreciable and service contracts are not, the court determined that the taxpayer had an incentive to inflate the price of the cattle and reduce the price of the service contract, while still paying fair market value for the entire package. After stating the general rule that basis equals cost, the Tax Court stated that this rule
 
 
 15
 "does not apply where a transaction is not conducted at arm's-length by two economically self-interested parties or where a transaction is based upon 'peculiar circumstances' which influence the purchaser to agree to a price in excess of the property's fair market value." ... In such cases, the basis of property for tax purposes may be limited to fair market value.
 
 
 16
 Lemmen, 77 T.C. at 1347 (citations omitted) (quoting Bixby v. Commissioner, 58 T.C. 757, 776 (1972)).
 
 
 17
 We agree with the Tax Court's application of the Lemmen rationale to this case. These beaver purchases clearly involved peculiar circumstances. The taxpayers were able to pay the major portion of the stated purchase price with beavers valued at the same inflated prices at which they had been purchased. Given the tax benefits to be obtained from a higher basis in the beavers and the fact that they would have to pay the higher price only in beavers, the taxpayers had an incentive to agree to inflated prices. Because of the peculiar circumstances involved in these purchases, we hold that the taxpayers' basis in their beavers must be limited to the fair market value of the beavers.
 
 
 18
 The taxpayers contend that they had an incentive to obtain the best possible price for the beavers because they were personally obligated on their promissory notes and would have to satisfy the debt out of their other assets if for some reason they could not pay in beavers. They point out that there is a chance their beaver herd might be wiped out by disease, making it impossible for them to pay the debt with beavers. The Tax Court found that there was little chance that the taxpayers would not be able to pay their investments using beavers. The projections supplied by the sellers gave every indication that the taxpayers would always have plenty of beavers with which to pay their notes. Further, the taxpayers' contracts provided that beavers that died during the first year after sale would be replaced. This provision enhanced the taxpayers' ability to repay in beavers. The Tax Court's findings on this issue are not clearly erroneous.
 
 
 19
 Because Bryant continued to pay cash after he was permitted to pay with beavers, his situation differs from that of the other taxpayers. However, the Tax Court found that Bryant's transaction should be treated the same as those of the other taxpayers. It reasoned that Bryant, just like all of the other taxpayers, agreed to a purchase price that was well in excess of the beavers' true value. At the time he purchased his beavers, Bryant was supplied with the same information as the other taxpayers. He was well aware of the tax advantages to be obtained from this transaction. Therefore, Bryant's purchase had the same peculiar characteristics as those of the other taxpayers. We agree with the Tax Court that Bryant's purchase should be viewed as it was structured at the time he entered into the transaction. At that time, he agreed to an inflated purchase price, knowing that he would be permitted to repay most of his debt with beavers. The fact that he later chose not to repay with beavers should not affect the character of this transaction.
 
 IV. THE FAIR MARKET VALUE OF THE BEAVERS
 
 20
 Having determined that the taxpayers' basis in their beavers should be limited to fair market value, we must determine the fair market value of the beavers. The record indicates that at the time the taxpayers entered into their contracts, Dennis Crum, Paul Sharp, and others were purchasing beavers for $16 to $250 each. The Tax Court relied on these purchases and the record as a whole to determine that the beavers purchased by the taxpayers were worth $200 per proven beaver, $137 per nonproven beaver, and $29 per yearling. We affirm these findings. They are not clearly erroneous.
 
 
 21
 The taxpayers argue that the Tax Court erred in its determination. They claim that the Tax Court should not have ignored the testimony of their experts as to fair market value. Each of the taxpayers' experts arrived at his estimate of fair market value without taking into account the contemporaneous sales of beavers at prices substantially less than those paid by the taxpayers. The Tax Court found that the experts estimates were unreliable for this and a variety of other reasons. It found that the contemporaneous sales were the best evidence of value in this case. Those findings are not clearly erroneous. Contemporaneous sales are highly probative of value. See Estate of Franklin v. Commissioner, 544 F.2d 1045, 1048 n. 4 (9th Cir.1976); Narver v. Commissioner, 75 T.C. 53, 96-97 (1980), aff'd, 670 F.2d 855 (9th Cir.1982) (per curiam).
 
 
 22
 The taxpayers argue that the contemporaneous sales are not relevant to the value of the beavers they purchased because they were all distress sales. The Tax Court found that the majority of the contemporaneous sales were not distress sales but were arm's length transactions. This finding is not clearly erroneous. The record contains many examples of sales at low prices by ranchers who had no reason to sell their animals for less than they were worth.
 
 
 23
 Limiting the taxpayers' basis to the fair market value of the beavers results in some of the taxpayers having paid principal amounts in cash for which they will receive no tax benefits. The Tax Court found that this result reflects the economic realities of these transactions. It found that while the taxpayers purchased beavers, they also purchased tax benefits. It therefore allocated the amounts paid by the taxpayers in excess of fair market value to the purchase of these tax benefits. We cannot say that this conclusion is clearly erroneous. These investments were promoted in part for the tax benefits they would produce. It is reasonable to conclude that a part of the purchase price for the investment was paid for the tax benefits. See Houchins v. Commissioner, 79 T.C. 570, 604-05 (1982) (part of price paid for cattle held to be paid in exchange for tax benefits).
 
 V. THE ADDITION TO TAX
 
 24
 In his answer in the Tax Court, the Commissioner assessed an addition to tax against taxpayers Hartman, Webber, and Wohl for their failure to report investment tax credit recapture for beavers that died or were otherwise disposed of. The addition was assessed under 26 U.S.C. Sec. 6653(a), which imposes an addition to tax for any underpayment of tax that is the result of negligence or intentional disregard of the rules or regulations. Because the Commissioner raised the issue for the first time in his answer he has the burden of proof on this issue.[2] Rule 142(a), Rules of Practice and Procedure of the United States Tax Court (May 1, 1979).
 
 
 25
 The Tax Court held that the Commissioner sustained his burden of proof, and it upheld his assessment. That decision was not clearly erroneous. A mere showing that the tax was not paid is not enough to prove negligence for purposes of section 6653(a). Poen v. Commissioner, 48 T.C.M. (P-H) 867, 868 (1979). However, in this case, the Commissioner also showed that these taxpayers were sophisticated businessmen who were aware of the provisions for recapture of investment tax credit. This showing is enough to satisfy the Commissioner's burden of proof on this issue.
 
 
 26
 Taxpayer Hartman argues that his failure to report investment tax credit recapture was not negligent because he received a replacement beaver for each of his beavers that died, resulting in an investment tax credit wash. Hartman raised this issue for the first time during the Rule 155 computation proceedings. New issues may not be raised in a Rule 155 proceeding. Rule 155(c), Rules of Practice and Procedure of the United States Tax Court. Therefore, this issue is not before us. However, the argument has no merit. Hartman admits that he should have reported the recapture. The fact that he received replacement beavers for which a new investment tax credit was available is irrelevant.
 
 VI. CONCLUSION
 
 27
 The Tax Court's decision in this case is AFFIRMED.
 
 
 
 [1]
 On this appeal, the taxpayers do not challenge the Tax Court's decision regarding their claimed interest deductions. We therefore do not address that issue
 
 
 [2]
 The Commissioner also assessed an addition to tax against Bryant. However, that assessment was made in the deficiency notice to Bryant, placing the burden of proof on Bryant. Bryant does not contest the Tax Court's determination that he is liable for the addition to tax