James C. MacKENZIE and Jill W. MacKenzie, Individuals, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 87–CV–72534–DT.

United States District Court, E.D. Michigan, S.D.

April 28, 1989.

Joseph Falcone, Southfield, Mich., for plaintiffs.

Thomas Clark, Justice Dept., Tax Div., Washington, D.C., for defendant.

## ORDER

HACKETT, District Judge.

The Internal Revenue Service (IRS) disallowed certain deductions claimed by plaintiff James C. MacKenzie[1] on the ground that plaintiff was not actually engaged in the film distribution business for profit. The IRS also contested the method of depreciation used by plaintiff with regard to that business. The case was tried before a jury and, at the conclusion of the trial, the jury determined that plaintiff purchased the two television films in question with the predominant purpose of making a profit, and that no part of the plaintiff's underpayment of tax was due to negligence. The jury also found that plaintiff had actually paid $150,000 for each film, by finding that the $115,000 notes that plaintiff had

given to Saturn Productions Company were bona fide notes.[2] However, the jury determined that the fair market values for the films were only $60,000 (Inca Gold) and $75,000 (The Sharkhunters), respectively.

At trial, the parties agreed to reserve two questions for decision by the court: 1) the proper method for depreciating the films and 2) the tax treatment, if any, of that amount by which the stated purchase price of the films exceeded the films' fair market value.

With respect to the first issue, it is plaintiff's position that he is entitled to use the method of depreciation which he claimed on his return, i.e., the method approved in *Kiro, Inc. v. Commissioner*, 51 T.C. 155 (1968) (allowing 60% of cost of film to be deducted in first year, 10% in second year, 5% each year thereafter.) It is defendant's position that the method of depreciation claimed by plaintiff is unacceptable and that plaintiff must use the straight line method of depreciation.

With respect to the second issue, plaintiff claims that the cost basis of the films should be $150,000 each ($115,000 note plus $35,000 cash) and that, with regard to the excess paid for the films over their fair market value, plaintiff is entitled to write off that excess in the year incurred, or to amortize that amount over the useful life of the films by the same method used for the films. It is defendant's position, however, that the amount by which the stated purchase price of the films exceeds the films' fair market value cannot be depreciated by the plaintiff. Defendant maintains further that no provision in the Internal Revenue Code (IRC) allows for any favorable tax treatment with respect to this amount during the years in suit and that, no tax benefits should flow to plaintiff with respect to this amount.

For the reasons set forth below, the court finds that: 1) the depreciation method used by plaintiff was not reasonable

---

1. Although there are two plaintiffs in this case, the evidence at trial showed that only James C. MacKenzie took part in the transactions in question. Therefore, throughout this opinion the court will use "plaintiff" in the singular, referring only to James C. MacKenzie.

2. There is no issue that plaintiff paid an additional $35,000 cash for each film.

under the facts of this case and that plaintiff must use the straight line method of depreciation; and, 2) plaintiff's depreciable basis in each film is $150,000.

■ It is a well-settled principle of tax law that a taxpayer is allowed a deduction from income only if he falls squarely within a statutory provision allowing a deduction. *See, e.g., New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790–91, 78 L.Ed. 1348 (1934); *Walter Constr. Co. v. Commissioner*, 634 F.2d 1029, 1039 (6th Cir.1980). With respect to property placed in service prior to January 1, 1981, section 167 of the Internal Revenue Code (IRC), 26 U.S.C. § 167, was the sole statutory provision which permitted deductions for depreciation. Section 167 allows as a depreciation deduction a "reasonable allowance" for the exhaustion, wear and tear of property used in a trade or business or of property held for the production of income. Section 167(b) contains a non-exclusive list of methods of depreciation which will be deemed "reasonable". In the event that the method of depreciation initially claimed by a taxpayer is found to be unacceptable or unreasonable, the taxpayer is required to use the straight line method of depreciation. *See* Treas.Reg. § 1.167(b)–1(a).

The depreciation deduction is designed to permit the taxpayer to recover, during the useful (or income-producing) life of an asset, the cost of the asset so that the asset may be restored at the end of its useful life. 5 Mertens, Law of Federal Income Taxation, § 23A.01. The law recognizes that over the life of an asset, its value will decrease through exhaustion, wear and tear, or obsolescence. The essence of the depreciation deduction is to permit the taxpayer to spread his loss over the years when a gradual loss is in fact occurring. *Id.*

## APPROPRIATE METHOD OF DEPRECIATION

Section 167(a) permits a "reasonable allowance" for depreciation. Plaintiff claimed, with respect to each film, a depreciation deduction in the amount of 60 percent of the claimed value of the films in the first year, 15 percent in the second year, and 5 percent in each year thereafter. As authority for this method, plaintiff relied on *Kiro, Inc. v. Commissioner*, 51 T.C. 155 (1968).

In *Kiro*, the taxpayer owned a television station which had acquired by license, from Paramount, the programming rights of 700 various television films and programs. Under its license agreement with Paramount, Kiro was permitted to broadcast each of the 700 films a maximum of 7 times over a 10–year period. The contract also provided that, upon certain conditions, Paramount had the right to withdraw any film. In the event of such a withdrawal, the contract between Kiro and Paramount specified the adjustments that would be made in the contract price. The contract provided that upon the withdrawal of a film, the amount to be refunded to Kiro would be equal to a percentage of the original film license fee, which percentage would be inversely related to the number of times the film had been broadcast, as follows:

| Number of times Kiro had broadcast withdrawn film | | | | | | |
|------|------|------|------|------|------|------|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 40% | 25% | 20% | 15% | 10% | 5% | 0 |

In light of the foregoing, Kiro claimed depreciation deductions on the following schedule over the seven-year life of the contract: 60%, 15%, 5%, 5%, 5%, 5%, and 5%.

The *Kiro* court determined that, under the circumstances of the case, "the first run of a film is the most important run and that each successive run diminishes rapidly in value." *Id.* at 170. Accordingly, the court reasoned, "it seems only reasonable that if a contract provides for more than one showing, the exhaustion should be allocated among the several showings on a graduated or sliding-scale basis so as to allocate the large portions to the earlier showings." *Id.* at 171. Thus, the *Kiro* court determined that a deduction of 60% in the first year of the license was a "reasonable allowance" for the exhaustion, wear and tear of the films, and that such a method of depreciation was consistent with

the income expectations of the parties as set forth in their contract. *Id.* at 171.

■ Unlike the situation in *Kiro,* the instant plaintiff was not a party to a contract which created a substantial likelihood that plaintiff would receive the bulk of his total anticipated revenue during the first year of the films' respective useful lives. To the contrary, plaintiff's distributor testified that he had not entered into any license agreements with television stations. Further, plaintiff's trial exhibit 18, at page 84, contains a chart wherein the promoter sets forth the income projections for the plaintiff's films. This chart shows that no proceeds were anticipated during the first year and that the amount of the anticipated proceeds would steadily increase each year until it peaked at $180,000 in the seventh year. Therefore, application of the method of depreciation approved in *Kiro* is not appropriate under the facts of this case because the instant plaintiff was not a party to the type of licensing contract present in *Kiro,* nor is the claimed method of depreciation consistent with the income expectations of plaintiff as described by plaintiff's promotor. Accordingly, the court finds that the method of depreciation claimed by plaintiff is not a "reasonable allowance" for depreciation under section 167(a) and, therefore, plaintiff is required to use the straight line method of depreciation. *See* Treas.Reg. § 1.167(b)–1(a).

## TAX TREATMENT OF EXCESS OF PURCHASE PRICE OVER FAIR MARKET VALUE

The total amount of depreciation deductions which a taxpayer may claim with respect to property is limited to the taxpayer's basis in the property. As a general rule, the basis of property for tax purposes is the cost of the property. *See* I.R.C. §§ 167(g), 1011 & 1012. Cost includes valid liabilities incurred in acquiring the property. *Waddell v. Commissioner,* 86 T.C.

848, 898 (1986), *aff'd,* 841 F.2d 264 (9th Cir.1988).

The jury determined that the two $115,-000 notes that plaintiff used to purchase the T.V. films were valid, genuine liabilities. In addition to these notes, plaintiff paid $35,000 cash for each film. Plaintiff therefore claims that the depreciable basis of each film should be $150,000—his cost per film.

Defendant points out, however, that the jury found that the fair market values for the films were $60,000 (Inca Gold) and $75,-000 (The Sharkhunters). Defendant then argues that, despite the amounts actually paid by plaintiff, plaintiff's depreciable basis is limited to the fair market value of the property.[3]

■ Defendant cites a number of cases to support its argument that plaintiff's basis is limited to the films' respective fair market values. Generally, however, in those cases in which courts limited the basis of an asset to its fair market value, the courts found that the taxpayers were not dealing at arms-length, that there was not a real indebtedness, or that there was not a bona fide business purpose. *See, e.g., Bryant v. Commissioner,* 790 F.2d 1463 (9th Cir.1986) (where notes payable in beavers, court found that as to portion of notes payable in beavers, there existed no bona fide indebtedness); *Waddell* (court found payment on nonrecourse note unlikely); *Lemmen v. Commissioner,* 77 T.C. 1326 (1981) (basis does not include portion of stated purchase price of asset that exceeds value of asset, if peculiar circumstances induce taxpayer to pay more for asset than its value). Unlike the cases relied upon by defendant, in the instant case the jury determined that plaintiff purchased the films with the predominant purpose of earning a profit, and that plaintiff and Saturn Productions intended that the promissory notes in question would actual-

---

**3.** The defendant also advances the argument that because plaintiff's notes are to be paid some time in the future, the notes should be discounted to present value. The jury found, however, that the notes in question represented genuine liabilities. In such a situation, the court will not "attach any significance to the fact that the obligation was not due until a point several years in the future." *Taube v. Commissioner,* 88 T.C. 464, 457 (1987) (citing *Melvin v. Commissioner,* 88 T.C. 63 (1987)).

ly be paid. There was no allegation or finding of bad faith on the part of plaintiff. The court finds in this fact situation that the taxpayer should not be limited to a fair market value basis but, rather, is entitled to a depreciable basis reflective of cost. *See* I.R.C. §§ 167(g), 1011 & 1012.

The court's conclusion is supported by the Ninth Circuit's statement in *Estate of Franklin v. Commissioner,* 544 F.2d 1045 (9th Cir.1976):

> Our focus on the relationship of the fair market value of the property to the unpaid purchase price should not be read as premised upon the belief that a sale is not a sale if the purchaser pays too much. Bad bargains from the buyer's point of view—as well as sensible bargains from the buyer's, but exceptionally good from the seller's point of view—do not thereby cease to be sales.

*Id.* at 1049 (citations omitted.)

Accordingly, the court finds that plaintiff's depreciable basis is $150,000 per film and that plaintiff is required to utilize the straight line method of depreciation with regard to that amount. IT IS SO ORDERED.