DOUGLAS G. WEBBER, BETTY J. WEBBER AND EDITH J. WEBBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webber v. Commissioner
Docket No. 10254-91
United States Tax Court
T.C. Memo 1992-667; 1992 Tax Ct. Memo LEXIS 707; 64 T.C.M. (CCH) 1336; November 18, 1992, Filed Decision will be entered for respondent. For Petitioners: Steven R. Mitchell. For Respondent: Jeri L. Gartside. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1980
$ 6,572
1981
$ 7,293
1982
$ 1,664
The parties have conceded that a depreciation deduction is not allowed for the years in issue. The parties have further stipulated to the amount of self-employment tax owed by petitioners. The only issue remaining for decision is whether petitioners are entitled to a theft loss under section 165[1] for interest paid on an investment in beavers that were subsequently declared overvalued. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation *708 of facts, together with the attached exhibits, is incorporated herein by this reference. At the time they filed their petition, Douglas G. and Edith J. Webber resided in Hermosa Beach, California. Betty J. Webber resided in San Diego, California, at the time of the filing. Douglas and Betty Webber timely filed their tax returns for tax years 1980 and 1981. Douglas and Edith Webber timely filed their tax return for tax year 1982. References to the petitioner in the singular are to Douglas G. Webber. During the years in issue, petitioner was the president and majority shareholder of Questron Corporation, which is engaged in the business of high technology electronics. We have previously addressed the investment activity in issue, beaver breeding, in Webber v. Commissioner, T.C. Memo. 1983-633, affd. sub nom. Bryant v. Commissioner, 790 F.2d 1463 (9th Cir. 1986). Douglas G. and Betty J. Webber were petitioners in the prior case, which was consolidated for trial with other investors in the beaver breeding venture. We have adopted the facts and holdings of the prior case that are relevant and necessary to the disposition *709 of the case at hand. These adopted facts are incorporated herein by this reference. Webber involved losses and deductions claimed for the taxable years 1977 through 1979. In 1976, petitioner became aware of the potential to invest in beavers through his neighbor and friend, Richard Cash, who owned a beaver herd at the time. Mr. Cash recommended a promoter, Dennis Crum, who gave petitioner a prospectus and background information on the beaver industry. Petitioner subsequently discussed the materials with Mr. Cash, and, in 1977, petitioner decided to invest in a herd himself. In December 1977, a Beaver Purchase Contract, a security agreement, and a promissory note were executed concerning petitioner's purchase of 40 pairs of beavers for a stated value of $ 109,200. The price was based upon values of $ 3,500 per proven pair and $ 2,400 per nonproven pair. Interest on the unpaid principal was set at 10 percent for 1977, 8 percent for 1978 and 6 percent thereafter. An initial cash payment, designated as $ 833 interest and $ 9,200 principal, was made by check on December 27, 1977. [2]
*710 Petitioners claimed losses attributable to deductions for depreciation, interest, and feed on their tax returns for the years 1977 through 1979. In her notice of deficiency, respondent disallowed the losses from the breeding operation on the ground that petitioners failed to establish that the transactions were bona fide, were entered into for profit, or had economic substance. The issue of theft losses was not raised in the prior case. In Webber v. Commissioner, supra, we found that the beavers did exist and petitioners did own them. We also determined that petitioners did have a profit objective. We concluded, however, that petitioners' basis in the beavers should be limited to their fair market value for purposes of determining the investment tax credit and depreciation. This conclusion was based primarily on the peculiar provisions of the arrangement constructed by Mr. Crum. The purchase contracts and related promissory notes permitted payment of a substantial portion of the purchase price through delivery of beavers to the seller rather than payment of cash. In addition, the stated indebtedness, to the extent it could be paid in beavers *711 with real values substantially less than the values designated in the contract and note, was clearly without substance. Therefore, the taxpayers were not entitled to interest deductions with respect to the stated amounts of the inkind portion of the indebtedness. We determined that the "purported interest obligations are, to the extent of the inflated values, without substance." "Interest" deductible under section 163 is a charge for the use or forbearance of money. Deputy v. Du Pont, 308 U.S. 488, 498 (1940); Norton v. Commissioner, 474 F.2d 608, 610 (9th Cir. 1973). Finally, we found that the fair market value was $ 200 per proven beaver, $ 137 per nonproven, and $ 29 per yearling. In accordance, we held that cash payments designated as interest but exceeding what we concluded can realistically be viewed as such should be characterized as additional principal payments in these cases. In Webber v. Commissioner, supra, James Luppino represented petitioners and was recommended to the petitioners by the promoter, Dennis Crum. Unknown to petitioner, Mr. Crum had been previously convicted *712 of aiding in the preparation of false income tax returns and was represented in his criminal case by the law firm of Luppino & Shekoyan. See United States v. Crum, 529 F.2d 1380 (9th Cir. 1976). Mr. Crum's conviction was related to the sale of beavers by backdating beaver purchase contracts and then fraudulently taking depreciation deductions. Id. at 1381. Respondent issued a notice of deficiency on March 28, 1991, for tax years 1980, 1981, and 1982. The notice was issued in accordance with our decision in Webber and the Ninth Circuit's affirmation in Bryant, and disallowed a portion of the interest and depreciation claimed as deductions by petitioners. The only remaining dispute in the case at hand is whether the interest may be deducted as a theft loss under section 165. OPINION Respondent disallowed petitioners' interest deductions on the beaver breeding investment for the years in issue. Respondent's determination is presumed correct and petitioners bear the burden of proving respondent erred. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner contends *713 that to the extent that he paid interest on an inflated debt and is unable to recover it, he is entitled to a theft loss. Section 165(a) permits a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In relation to theft losses, section 165(a) is applicable during the taxable year "in which the taxpayer discovers such loss." Sec. 165(e). If in the year of discovery there is a claim for reimbursement that has reasonable prospect for recovery, a loss is not sustained until the tax year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Citron v. Commissioner, 97 T.C. 200, 207 (1991); secs. 1.165-1(d)(3), 1.165-8(a)(2), Income Tax Regs. Petitioners bear the burden of proving a loss is deductible. Clapp v. Commissioner, 321 F.2d 12, 14 (9th Cir. 1963), affg. 36 T.C. 905 (1961). The issue of whether a theft loss occurred must be determined under the laws of the State or other jurisdiction wherein the loss allegedly was sustained. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), *714 affg. 61 T.C. 354 (1973); Luman v. Commissioner, 79 T.C. 846, 860 (1982). The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful deprivation of property of another, is of little importance provided it constitutes a theft. Norton v. Commissioner, 40 T.C. 500, 506 (1963), affd. 333 F.2d 1005 (9th Cir. 1964). Section 484(a) of the California Penal Code (West 1988), in pertinent part, defines theft as follows: Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, * * * is guilty of theft. * * * The crime of "theft by false pretenses" consists of the making of a false pretense or representation by the accused, knowledge that the misrepresentation is false with the intent to defraud the owner of his property, *715 and actual reliance by the owner on the false pretense in parting with his property. People v. Kiperman, 69 Cal. App. 3d Supp. 25, 138 Cal. Rptr. 271 (1977); People v. Fujita, 43 Cal. App. 3d 454, 117 Cal. Rptr. 757 (1974). It is not essential that the defrauded party rely entirely upon the misrepresentation in parting with his property. However, the false pretense or representation must have materially influenced him to part with his property. Perry v. Superior Court of Los Angeles County, 57 Cal. 2d 276, 368 P.2d 529, 19 Cal. Rptr. 1 (1962). Petitioner must establish that he "parted with money on the strength of * * * false representations * * * within the meaning of the criminal law." Estate of Melcher v. Commissioner, 476 F.2d 398, 401 (9th Cir. 1973), affg. T.C. Memo. 1970-237. We have previously held that to sustain a theft loss deduction with respect to amounts paid in connection with a scheme to avoid taxation, the taxpayer must demonstrate that he entered into *716 the transaction only after having been deceived as to its nature. West v. Commissioner, 88 T.C. 152, 163 (1987), citing Nichols v. Commissioner, 43 T.C. 842, 887 (1965). In order to satisfy his burden of proof, petitioner must prove that he incurred a loss that is deductible under section 165. Petitioner claims that he has been defrauded in that his neighbor, Mr. Cash, also an investor in the beaver breeding shelter, had told petitioner that the shelter was a legitimate business and had successfully been through five or six previous audits by respondent. Petitioner later discovered that the shelter had never been audited. Petitioner also alleges that these issues were not brought forward in the original trial due to a conflict of interest of his counsel. Mr. Luppino, petitioner's attorney in the first case, had also represented Mr. Crum in a tax felony case which resulted in a conviction, occurring prior to petitioner's investment in the shelter. This conviction, petitioner claims, was not revealed to him until 1984, after Webber had been decided and after petitioner had taken the interest deductions in issue. *717 In proving that his loss was caused by a theft as defined by California law, petitioner must first establish that a false pretense or representation was made. In this case, the alleged false representation that the shelter had passed five or six audits was not made by the promoter of the investment, Mr. Crum, but by a fellow investor, Mr. Cash. Additionally, petitioner failed to offer any evidence that the statement was even made, other than his own testimony which we did not find to be credible. Secondly, petitioner must show that the accused made the misrepresentation with the intent to defraud petitioner of his property or money. Once again, petitioner failed to offer any evidence of fraudulent intent on the part of Mr. Crum. The misrepresentation regarding the shelter's previous audits was not made directly by Mr. Crum to petitioner, and petitioner did not establish that the misrepresentation originated from Mr. Crum. Nor did petitioner establish that Mr. Cash, the neighbor who allegedly made the misrepresentation, did so with intent to defraud petitioner. Mr. Cash was merely a fellow investor in the tax shelter, and not one of its promoters. Finally, petitioner must *718 show that he actually relied on the false pretense in making his investment. Once again, petitioner failed to link the misrepresentation to the promoter of the investment. Additionally, petitioner failed to establish that the misrepresentation materially influenced him to make the investment. Promotional materials supplied to the investors described the business of beaver breeding and the expected tax benefits in great detail. See Webber v. Commissioner, T.C. Memo. 1983-633. Without additional evidence, we are not persuaded petitioner materially relied on the statement of his neighbor. Petitioner not only failed to establish that a theft loss occurred during the years in issue, he also failed to establish that the alleged losses actually were discovered during those years. See section 165(e). As we stated in Marine v. Commissioner, 92 T.C. 958 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991), it is the discovery of the theft, and not a mere claim to one of the other losses enumerated under section 165, that entitles petitioner to the theft loss deduction. "Until *719 knowledge of both theft and loss coexist, a theft loss deduction is untenable." Id. at 976. We find that these conditions did not arise in the case during any of the years in issue. Petitioner claims a theft loss deduction for 1980, 1981, and 1982. Although petitioner was put on notice by respondent in 1979 that the beavers were overvalued, he continued to deduct the interest through 1982. Even though petitioner claims that he thought he was defrauded earlier, he testified at the first trial in 1983 that he believed he had paid a fair price for the beavers. Petitioner attempts to explain that this testimony described what he believed in 1979 at the time of the initial investment. However, we find that his explanation lacks credibility. In conclusion, we find that petitioner failed to establish a deductible theft loss for any of the years in issue. Accordingly, the deficiency as set forth in respondent's notice of deficiency, disallowing deductions for tax years 1980 through 1982, is correct. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Principal payments were to be made as follows: On or before December 31, 1977, $ 9,200; December 31, 1980, $ 4,800; December 31, 1981, $ 9,600; December 31, 1982, $ 19,200; December 31, 1983, through 1987, $ 12,000; and on or before December 31, 1988, $ 6,400. Beginning on or after 1980, principal payments could be made in beaver, valued at $ 3,500 per proven pair, $ 2,400 per nonproven pair, and $ 500 per yearling pair.↩